UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| |
|---|
| SANTIAGO CERROS MELENDEZ, *et al.*, Plaintiffs, v. POY LOUNG DC GROUP, LLC, *et al.*, Defendants. |

Civil Action No. 17-cv-370 (CKK)

## MEMORANDUM OPINION
(September 27, 2018)

Plaintiff Santiago Cerros Melendez was formerly employed simultaneously at three restaurants referred to as Kruba, Teakwood, and Regent Thai Cuisine, as a kitchen hand, from November 2014 to December 2015. Plaintiff Luis Eduardo Diaz Argueta was formerly employed at Teakwood, first as a dishwasher and later, a cook and sushi preparer, from February 2013 through December 2016. Plaintiffs allege that the Defendants — the corporate entities affiliated with the three restaurants and an individual who has an ownership interest in all three restaurants — failed to pay them minimum and overtime wages as required by D.C. and federal law. The federal statute relied upon by Plaintiffs is the Fair Labor Standards Act ("FLSA"), which mandates time-and-a-half wages for hours worked over forty each week and a base minimum wage of $7.25 per hour, which may be adjusted upward by the state. *See* 29 U.S.C. § 207(a)(1), 206(a)(1), 218. Plaintiffs rely further on the District of Columbia Minimum Wage Act Revision Act ("DCMWA"), which requires time-and-a half for hours worked over forty, and a mandatory minimum wage ranging between $8.25 per hour and $11.50 per hour during the time frame at

issue in this case. D.C. Code §§ 32-1003(c), 32-1003 (a). Plaintiffs claim damages pursuant to the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301, *et seq.* Furthermore, in response to a Counterclaim by Defendants/Counter-Plaintiffs, Mr. Melendez alleges retaliation pursuant to the DCWPCL. D.C. Code §§32-1311(a)(3), 32-1311(b).

After reviewing the parties' submissions,[1] relevant case law and applicable statutory authority, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion for Partial Summary Judgment. A separate Order accompanies this Memorandum Opinion.

## I. BACKGROUND

Many of the underlying facts in this case are undisputed and will be set out along with the procedural history of this case. The disputed facts will be addressed later in this Memorandum Opinion. Defendant Poy Loung DC Group, LLC owns and operates the restaurant known as Kruba; Defendant Galae Thai, Inc. owns and operates the restaurant known as Teakwood; and Defendant Poy Loung, Inc. owns and operates the restaurant known as Regent Thai Cuisine. Pls.' SOF ¶ 1; Defs.' SOF ¶ 1. Defendants admit that Plaintiffs are covered by the FLSA because the three restaurants are covered enterprises. Pls.' SOF ¶ 3, Defs.' SOF ¶ 3. The business records and employment records for all three restaurants are maintained in one location by the same accountant. Pls.' SOF ¶ 4, Defs.' SOF ¶ 4.

---

[1] The Court's consideration focused on the following documents:
- Pls.' Mot. For Partial Sum. Judg. and Mem. of Points & Auth. ("Pls.' Mot."), ECF No. 20, and Pls.' Stmt. of Material Facts ("Pls.' SOF."), ECF No. 20-1.
- Defs.' Opp'n to Pls.' Mot. For Partial Sum. Judg. ("Defs.' Opp'n"), ECF No. 21, and Defs.' Resp. to Pls.' Stmt. of Material Facts ("Defs.' SOF "), ECF No. 21-1.
- Pls.' Reply to Defs.' Opp'n to Pls.' Mot. For Partial Sum. Judg. ("Pls.' Reply"), ECF No. 22.

Plaintiffs have also named as a Defendant Mr. Chuchart Kampirapang, who has a 90% ownership interest in Teakwood and a 100% ownership interest in Kruba and Regent Thai Cuisine. Pls.' SOF ¶ 2, Defs.' SOF ¶ 2. Defendant Kampirapang determined Plaintiffs' pay, signed and tendered their paychecks, fired Plaintiff Melendez, promoted Plaintiff Argueta, and decided how much in "tips" to pay Plaintiff Argueta. Pls.' SOF ¶¶ 2, 25; Defs.' SOF ¶¶ 2, 25. Defendants acknowledge that they did not file any quarterly reports with the Department of Employment Services regarding any "tips" provided to Plaintiff Argueta. Pls.' SOF ¶ 31, Defs.' SOF ¶ 31.

Plaintiff Melendez was allocated between Defendants' three restaurants — Kruba, Teakwood, and Regent Thai Cuisine — and he worked for Defendants from approximately June 1, 2014 to approximately December 24, 2015. Pls.' SOF ¶¶ 5-7; Defs.' SOF ¶¶ 5-7. Mr. Melendez worked as a kitchen hand whose job duties included washing dishes, cutting vegetables and meat, and cleaning. Pls.' SOF ¶ 8; Defs.' SOF ¶ 8. Mr. Melendez was paid a fixed, semi-monthly salary, which varied with how much time he worked, and ranged from $750.00 to $800.00, but Defendants did not retain precise records of the hours Mr. Melendez worked. Pls.' SOF ¶¶ 13, 12; Defs.' SOF ¶¶ 13, 12. Mr. Melendez was paid with one check, issued by Defendant Poy Loung, Inc., for his work at all three restaurants. Pls.' SOF ¶ 16; Defs.' SOF ¶ 16. Mr. Melendez was fired from all three restaurants at the same time. Pls.' SOF ¶ 17; Defs.' SOF ¶ 16.

Plaintiff Argueta worked at Teakwood from approximately February 1, 2013 to approximately December 16, 2016, first as a dishwasher and later as a cook and sushi preparer. Pls.' SOF ¶¶ 18 -20; Defs.' SOF ¶¶ 18-20. Plaintiff Argueta was paid a fixed, semi-monthly salary, which varied with time worked, and increased over the years. Pls.' SOF ¶ 24; Defs.' SOF

¶ 24. Defendants did not itemize any deductions or credits on Plaintiffs' paychecks.  Pls.' SOF

¶31; Defs' SOF ¶ 31.

Plaintiffs filed their initial Complaint, ECF No. 1, on March 1, 2017, asserting that

Defendants failed to pay the Plaintiffs minimum and overtime wages.  Defendants/Counter-

Plaintiffs answered the Complaint and filed a Counterclaim on April 6, 2017, asserting that: (1)

Mr. Melendez conspired with a plaintiff from another wage and hour lawsuit (the "Third-Party

Defendant") that was filed against these Defendants/Counter-Plaintiffs to publicize or share

information about that case, which violated the Settlement Agreement entered into in that case

(Count II), and (2) Mr. Melendez tortiously interfered with Defendants/Counter-Plaintiffs'

contractual rights when he and the Third-Party Defendant violated the Settlement Agreement

and/or solicited former co-workers to file suit (Count III).  *See generally* Counterclaim, ECF No.

11.

On April 17, 2017, Plaintiffs' filed their First Amended Complaint.  Plaintiffs allege

therein that it was typical that both Plaintiffs worked more than forty hours per week without

receiving overtime pay, and when their semi-monthly salaries are divided by the number of hours

worked, neither Plaintiff received the applicable minimum wage.  *See generally* First Amended

Complaint, ECF No. 14 (Counts I and II).  Plaintiffs allege further that Defendants failed to pay

wages that were due to them after they left employment (Count III).  They also assert a retaliation

claim relevant to Plaintiff Melendez (Count IV), in response to Defendants' allegations in its

Counterclaim.

After the close of discovery, Plaintiffs filed the instant Motion for Partial Summary

Judgment, Defendants filed their Opposition, and Plaintiffs filed a Reply.[2]   In their Motion, Plaintiffs request judgment in their favor on the following issues regarding liability: (1) Defendant Kampirapang is individually liable as an "employer;" (2) the three Corporate Defendants are jointly liable for any violations of the FLSA and DCMWA; (3) Defendants violated the overtime provisions of the FLSA and the DCMWA; (4) Defendants violated the minimum wage provisions of the DCMWA; (5) Defendants' Counterclaim violates the anti-retaliation provisions of the DCWPCL, and therefore, the Court should enter judgment for Counter-Defendant Melendez on the Counterclaim and against Defendants on Plaintiff Melendez's claim of retaliation; (6) Defendants may not take a "tip credit" to partially offset their failure to pay the minimum wage and may not raise this as a partial defense; and (7) Plaintiffs are entitled to one hour of compensation at the then-current D.C. minimum wage for every full workday they worked.   Each of these issues will be addressed in turn by this Court.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).   The movant must set forth the foundation for its motion and identify segments of the record demonstrating an absence of genuine dispute of material facts.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The mere existence of *some* factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. Fed. R. Civ. P. 56(a).  A fact is "material" if it may affect the substantive

---

[2] Plaintiffs' Reply, ECF No. 22, states merely that they "stand on their original motion."

outcome of the litigation. *See Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Holcomb*, 433 F.3d at 895. A dispute is "genuine" if, upon considering the evidence, a reasonable jury could return a verdict for the nonmoving party. *See Scott v. Harris* 550 U.S. 372, 380 (2007); *Anderson*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895.

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record — including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence — in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. 317, 324 (1986). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *See Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e); *see* LCvR 7(h)(1) (in resolving summary judgment motions, the court "assume[s] that facts identified by the moving party in its statement of material facts are admitted, unless such fact is controverted in the statement of genuine issues filed in opposition to the motion.").

When faced with a motion for summary judgment, the district court may not assess credibility or weigh evidence. *See Anderson*, 477 U.S. at 255; *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007) (noting that courts must "eschew making credibility determinations or weighing the evidence."). "If material facts are at issue, or, though undisputed, are susceptible to divergent inferences, summary judgment is not available." *Moore v. Hartman*, 571 F.3d 62,

66 (D.C. Cir. 2009) (quoting *Kuo-Yun Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994)). Ultimately, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. Accordingly, the nonmovant must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Celotex*, 477 U.S. at 324 (the party opposing summary judgment must present affirmative evidence showing "a genuine issue for trial"). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

### III. ANALYSIS

#### A. Defendant Kampirapang's Individual Liability

To be liable for violations of the FLSA, the defendant must be an "employer," which includes "any person acting directly or indirectly in the interest of an employer in relation to an employee," where an "employee" is an individual employed by an employer," and the term "employ" is defined as "to suffer or permit to work." 29 U.S.C. § 203 (d), (e)(1), (g); *see Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947) (finding that under the FLSA, the "definition of 'employ' is broad"). Similar to the FLSA, the DCWPCL states that an "employer" is "every individual . . . employing any person in the District of Columbia." D.C. Code Section 32-1301(IB). "Because the DCWPCL and the FLSA contain nearly identical provisions with respect to employers' liability, the DCWPCL is to be construed consistently with the FLSA." *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 1, 5 n. 2 (D.D.C. 2010).

The definition of an "employer" is broadly construed to serve the remedial purposes of the FLSA. *Morrison v. Int'l Programs Consortium, Inc.* 253 F.3d 5, 10 (D.C. Cir. 2001). In

analyzing whether a putative employer is an employer under the FLSA, the Supreme Court found that "'economic reality' rather than 'technical concepts' is to be the test of employment." *Goldberg v. Whitaker House Corp., Inc.*, 366 U.S. 28, 33 (1961). Courts examine multiple factors designed to demonstrate "the extent to which typical employer prerogatives govern the relationship between the putative employer and employee." *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994)). The economic reality test considers whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Morrision*, 253 F. 3d at 11. There is no one dispositive factor, but rather, courts look at the totality of the circumstances. *Id.*

"At minimum, an individual who exercises operational control over an employee's wages, hours and terms of employment qualifies as an "employer," and is subject to individual liability." *Guevara v. Ischia, Inc.,* 47 F. Supp. 3d 23, 26 (D.D.C. 2014). Individuals who own or manage a business may also be held accountable as employers pursuant to the economic reality test and in consideration of their ownership interest. "To determine whether a corporate officer has operational control, the Court looks at the factors above plus the ownership interest of the corporate officer." *Ventura v. Bebo Foods*, 738 F. Supp. 2d at 5. In that case, the court found that a restaurant owner was individually liable as an employer because he had "operational control over the corporate defendants insofar as he had a "significant ownership interest" in the business, as well as the "power to hire and fire, control work schedules and supervise employees, determine pay rates, and maintain employment records." *Id.*; *see also Martinez v. Asian 328, LLC*, Case No. 15-cv-1071 2016 WL 4621068 *4 (D.D.C. 2016) (finding that the sole owner of defendant restaurant who "exercised total control over the operations of the restaurant, including making

all decisions to hire and fire employees, set pay rates, set work schedules, and keep employment records" was an employer under D.C. and federal law.)

In the instant case, Defendant Kampirapang is the sole owner of corporate Defendants Poy Loung D.C. Group, LLC (Kruba) and Galae Thai, Inc. (Regent Thai Cusine), and he has a 90% ownership interest in corporate Defendant Poy Loung, Inc. (Teakwood). Pls.' SOF ¶ 1; Defs.' SOF ¶ 1. Defendants concede that Defendant Kampirapang exercised control over employee promotions and firings, and that he determined pay and signed and tendered paychecks. Pls.' SOF ¶ 2; Defs.' SOF ¶ 2. Defendants do not concede that Defendant Kampirapang supervised Plaintiffs' performance, directed their schedules or monitored their compliance with the schedules, but Defendants do not proffer any evidence or argument to dispute Plaintiffs' contention. Defs.' SOF ¶ 2; *but see* Pls.' Mot. Ex. B [Kampirapang Deposition] at 23 (acknowledging that he decided that Plaintiff Melendez should work four days at one restaurant, two days at another and one day at another), at 31 (he determined how much Plaintiff Argueta should receive in tips based on his job performance); Ex. E [Defendant Poy Loung, Inc.'s Answers to Interrogatories] at 8 ("Compliance to schedule was monitored by Chuchart Kampirapang . . . and Eduardo Murillo (Chef)"). Accordingly, Defendants' general denial that Defendant Kampirapang supervised the Plaintiffs' performance or directed their schedules is contradicted by Mr. Kampirapang's own deposition testimony and Defendants' answers to interrogatories.

Plaintiffs assert that Defendant Kampirapang is an employer pursuant to the FLSA and the D.C. Code because of his operational control over Plaintiffs based upon his ability to promote employees, fire employees, direct their schedules and monitor compliance therewith, supervise their performance, and set pay rates, and because of his ownership interest in the corporate

Defendants.

Accordingly, considering the record before this Court and the lack of any genuine dispute as to any issue of material fact, the Court finds that Defendant Kampirapang is an employer for purposes of this case, and Plaintiffs are entitled to summary judgment on this issue.

**B. Joint Liability of the Three Corporate Defendants**

Plaintiffs contend that the three corporate Defendants should be treated as a "joint employer" where "all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA], including the overtime provisions, with respect to the entire employment for the particular workweek." Pls.' Mot. at 9 (citing *McKinney v. United Stor-All Ctrs. LLC*, 656 F. Supp. 2d 114, 132 (D.D.C. 2009)). Plaintiff cite further to the applicable FLSA regulation, 29 C.F.R. § 791.2, which discusses Joint Employment as follows:

> (a) . . . If the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act. In this event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act, including overtime provisions, with respect to the entire employment for the particular workweek . . .

> (b) Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:

>> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or

>> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or

>> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls,

is controlled by, or is under common control with the other employer.

Plaintiffs contend that, pursuant to this regulation, all three corporate defendants are jointly liable because "employment by one employer [was] not completely disassociated from employment by the other employer(s)." Pls.' Mot. at 10. To illustrate this, Plaintiffs assert Defendant Kampirapang —who owns all three Defendant restaurants — allocated Plaintiff Melendez to all of them as if they were one enterprise. Pls.' SOF ¶¶ 1-2, 5; Defs.' SOF ¶¶ 1-2, 5. Plaintiff Melendez was paid with one check issued by Defendant Poy Loung, Inc. for his work at all three restaurants. Pls.' SOF ¶ 16; Defs.' SOF ¶ 16. When Plaintiff Melendez was fired, he was terminated from all three restaurants at once. Pls.' SOF ¶ 17; Defs.' SOF ¶ 17. Finally, Defendants' business and employment records for all three restaurants were maintained in a central location by the same accountant. Pls.' SOF ¶ 4; Defs.' SOF ¶ 4.

The factors that Plaintiffs rely upon to show that the three restaurant Defendants were a "joint employer" subject to "joint liability" are uncontroverted by the Defendants, and accordingly, summary judgment on this issue is appropriate.

**C. Violation of Overtime Provisions of the FLSA and the DCMWA, and the Minimum Wage Provisions of the DCMWA**

Pursuant to the FLSA and the DCMWA, employers must pay non-exempt employees overtime, which is one and one-half times their regular rate for hours worked over 40 in any one workweek. 29 U.S.C. § 207(a) (FLSA); D.C. Code § 32-1003(c) (DCMWA). Defendants do not argue that Plaintiffs — non-supervisory kitchen workers — are exempt from the overtime requirement. The DCWMA required employers to pay a minimum wage of $8.25 per hour until June 20, 2014, $9.50 per hour from July 1, 2014 through June 30, 2015, $10.50 per hour from July 1, 2015 through June 30, 2016, and $11.50 per hour from July 1, 2016 through June 30, 2017.

D.C. Code § 32-1003.

As previously noted, the parties agree that Plaintiff Melendez worked from approximately June 1, 2014 to approximately December 24, 2015, and he was paid a semi-monthly salary of $750.00, which was raised to $800.00 beginning on October 15, 2015. Pls.' SOF ¶¶ 6, 13; Defs.' SOF ¶¶ 6,13. Nor is there any dispute that Plaintiff Argueta worked from approximately February 1, 2013 to approximately December 16, 2016, and he was paid a semi-monthly salary that "varied somewhat" depending on his work schedule and was "gradually increased . . . over the years." Pls.' SOF ¶¶ 18, 24; Defs.' SOF ¶¶ 18, 24. Deposition testimony by Mr. Kampirapang establishes that Plaintiff Argueta's semi-monthly salary ranged from $750.00 to $1,000.00, over the course of his employment first as a dishwasher and later a sushi preparer, which is when he also received tips. Kampirapang Dep. at 28-31.

### 1. Plaintiff Melendez

Plaintiffs acknowledge that there is a genuine dispute regarding the amount of overtime owed but ask this Court to rule now that the Defendants are liable for violations of the FLSA and the DCMWA. In this Circuit, it is well-established that "an employee bringing suit has the burden of proving that he performed work for which he was not properly compensated." *Arias v. U.S. Serv. Indus., Inc.,* 80 F.3d 509, 511 (D.C. Cir. 1996) (internal quotations omitted). At this point, Plaintiffs have failed to do so.

Because there are no precise time records for Plaintiff Melendez, and Plaintiffs have not submitted any affidavits by the Plaintiffs in support of their Motion (nor does there appear to be any deposition testimony by Plaintiffs), Plaintiffs calculate Mr. Melendez's work hours based solely upon the testimony provided by Defendant Kampirapang and discovery responses provided by Defendants. *See* Pls.' Mot. at 11. As an aside, this Court notes that Defendant Kampirapang's

deposition testimony was no model of clarity, in part because he seemed to get confused about the three different restaurants when providing information about hours worked versus operating hours but also because some of Plaintiffs' questions misstated the deponent's testimony or confused the facts in this case.

Plaintiff Melendez focuses on the time in which he was working at <u>Kruba</u> <u>only</u>, and he calculates his weekly work schedule as follows:

- Monday through Thursday from 11:30 a.m. to 10:00 p.m. (10.5 hours per day);

- Friday from 11:30 a.m. to 11:00 p.m. (11.5 hours per day);

- Saturday from 12:00 a.m. to 11:00 p.m. (11.0 hours per day); and

- Off on Sunday.

Plaintiffs' calculation totals 64.5 hours a week without any breaks. *See* Pls.' Mot. at 11 (chart). Plaintiffs' calculation that Mr. Melendez worked more than 40 hours per week in at least some weeks relies primarily on Defendant Kampirapang's testimony, but also on Interrogatory Response ¶ 10 by Poy Loung Group, LLC. That question mistakenly asks for "Regent Thai's typical hours of operation" as opposed to Kruba's hours of operation, and accordingly Kruba's hours of operation are unclear from the record before this Court. *See* Ex. C.

Regarding breaks, Plaintiffs disagree with Defendant Kampirapang's testimony that Mr. Melendez had a break from 2:30 p.m. to 4:30 p.m. each day, but they proffer nothing to rebut it. *See* Kampirapang Dep. at 14. Instead, Plaintiffs contend that even if Mr. Melendez had a two hour break each day, he is still eligible for overtime because he would have worked 52.5 hours per week. Pls.' Mot. at 12. This does not however factor in any time spent "on the clock" while eating meals. *See* Kampirapang Dep. at 35-37. Nor does it consider Defendant Kampirapang's testimony that "[f]irst [Plaintiff Melendez] worked until six months and then we fire[d] him out

because he g[o]t drunk. He [did] not show up too many times." Kampirapang Dep. at 15; *see also* Kampirapang Dep. at 24 (noting that Mr. Melendez was fired because "he g[o]t drunk at work [and] [he] told him too many times.") Furthermore, in response to a deposition question asking if he wrote the number of hours worked by Plaintiff Melendez, Defendant Kampirapang responded "No, because we cannot write down. Sometimes he comes late. He is not on time every day. That's why we cannot write down how many hours he worked . . ." Kampirapang Dep. at 20. Accordingly, it is unclear in this case how many hours per week Mr. Melendez was working when he worked at Kruba only.

Defendants focus then on Plaintiff Melendez's weekly hours during the period when he worked at all three restaurants, after he was fired and then re-hired. *See* Kampirapang Dep. at 14. Defendants argue that, "[w]hen analyzed in the light most favorable to the Defendants, Kampirapang's testimony establishes that Melendez worked less than 40 hours per week." Defs.' Opp'n at 7. Defendant Kampirapang testified that during the time when Plaintiff Melendez was working at all three restaurants, he worked at Regent Thai on weekdays, from 11:30 a.m. until 2:30 p.m., and then he came back from 6:00 p.m. to 10:00 p.m. Kampirapang Dep. at 17-18. This would result in a 7- hour workday on the four days that Plaintiff Melendez worked at Regent Thai.

Defendant Kampirapang testified further that Plaintiff Melendez worked at Teakwood on Sunday, Ex. B at 17. According to Pls.' Mot., Ex. D [Defendants Galae Thai, Inc.'s Answers to Interrogatories] at 7-8, Teakwood is open from noon to 10:00 p.m. on Sundays, and Defendant Kampirapang alleges that Plaintiff Melendez had a two hour break each day, which would result in an 8-hour Sunday workday for Plaintiff Melendez. Kampirapang Dep. at 14.

Because of the lack of clarity in the deposition testimony, it is unclear whether Plaintiff

Melendez worked on Friday or Saturday at Kruba, and as previously noted, the operating hours at Kruba are unclear. If Plaintiff Melendez worked at Kruba on Saturdays from noon to 11 with a two-hour break, *see* Kampirapang Dep. at 15-16, Plaintiff's work hours would total 9.

Accordingly, Plaintiff Melendez's hours for the workweek would total 45 hours; however, Defendants note that Defendant Kampirapang testified that Plaintiffs took meal breaks three times a day for 20 minutes each, while on the clock, which may bring the total hours down to 40 or under. Kampirapang Dep. at 35-37. Defendant Kampirapang testified further that Plaintiff Melendez often did not show up for work and sometimes came in late. Kampirapang Dep. at 14, 20 23.

Plaintiffs do not address Defendant's contention that Plaintiff Melendez worked less than 40 hours per week during the time when he worked at the three restaurants; rather, Plaintiff Melendez focuses only on the time in which he worked only at Kruba. Despite the fact that there are no written records to reflect the hours worked by Plaintiff Melendez, Plaintiff did not provide any declaration or affidavit regarding the hours that he worked but instead elected to rely solely on Defendant Kampirapang's testimony to provide the basis for his calculation. Unfortunately, Defendant Kampirapang's testimony is far from clear, and the record in this case is incomplete. Moreover, Plaintiffs pick and choose those parts of the testimony that support their theory that Plaintiff Melendez worked over forty hours per week without rebutting (or even addressing) those parts of the testimony that cast doubt on the number of hours; *i.e.,* testimony about breaks, meals taken while on the clock, and Plaintiff's alleged tardiness, sporadic attendance, and inebriation while on the job, which allegedly made it difficult to track Plaintiff's hours, and ultimately resulted in his being fired from the job. These are genuine issues of material fact that bear directly on the calculation of the actual number of hours worked by Plaintiff Melendez. "[B]oth parties' briefing

makes it clear that the details in this case are of paramount importance [and] it is for a jury to evaluate those details at trial, to make the necessary findings, and to determine, whether . . . Defendants are liable for violations. . . ." *Dinkel v. MedStar Health*, Civ No. 11-998 (D.D.C. Aug. 3, 2016) (J, Kollar-Kotelly).

Because of the inconsistencies between Plaintiffs' calculation and Defendant Kampirapang's testimony upon which Plaintiffs rely, and the lack of any relevant documentation that might offer confirmation of how many hours Plaintiff Melendez worked, summary judgment on the issue of liability for overtime pay is inappropriate. *See Guevara v. Ischia, Inc.*, 47 F. Supp. 3d 23, 28 (D.D.C. 2014) (Because "the Court could draw no "just and reasonable inference" about "how often, if ever, and to what extent [plaintiffs] worked in excess of forty hours per week," summary judgment was inappropriate.) In *Guevara*, the Honorable John D. Bates explained that where an employer's time records are incomplete or inaccurate, an employee is not barred from recovering, but he must "prove[ ] that he has in fact performed work for which he was improperly compensated . . . and produce [ ] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Guevara*, 47 F. Supp. 3d at 28 (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). Furthermore, Plaintiffs' claim that Defendants failed to pay Plaintiff Melendez the appropriate minimum wage rests in part on a more precise calculation of the weekly hours worked, and accordingly, the Court declines to award summary judgment for Plaintiff Melendez on that issue because there is an unresolved dispute over the number of hours worked.

### 2. Plaintiff Argueta

Plaintiffs begin their argument regarding Plaintiff Argueta's claim for overtime pay by stating that "Defendant Kampirapang's testimony as to Plaintiff Diaz Argueta's schedule was

confusing[,]" and accordingly Plaintiffs will rely on time records produced by Defendants "that solicited precise data on Plaintiffs' hours worked." Pls.' Mot. at 12. The Court notes however that the time records relied upon by Plaintiff Argueta leave unanswered questions regarding facts that are material to the analysis of Plaintiff's entitlement to any overtime pay.

Defendant Kampirapang testified that Plaintiff Argueta's schedule at Teakwood, when Plaintiff was a dishwasher, was Monday through Thursday, 11:30 a.m. to 10:00 p.m., Friday, 11:30 a.m. to 11:00 p.m., and Saturday, noon to 11:00 p.m. Kampirapang Dep. at 26-27. The Court notes that these hours stated add up to 64.5, without allowing for any breaks for meals or otherwise, which is contrary to Defendant Kampirapang's testimony discussed in subsection a. above. When Plaintiff Argueta was a sushi preparer, his schedule was Monday half day, 5:00 p.m. to 10:00 p.m.; Tuesday and Wednesday, 11:30 a.m. to 3:00 p.m. and then 5:00 p.m. to 10:00 p.m.; off half day Tuesday and all day Thursday; Friday, 11:00 a.m. to 3:00 p.m. and then from 5:00 p.m. to 11:00 p.m.; Saturday, 12:30 p.m. to 3:00 p.m. and then 5:00 p.m. to 11:00 p.m.; and Sunday, 12:30 p.m. to 3:00 p.m. and then 5:00 p.m. to 10:00 p.m. Kampirapang Dep. at 27-28. The Court notes that these hours total 43, assuming Plaintiff Argueta worked on Tuesday mornings as opposed to Tuesday evenings, but again, it is unclear whether this schedule includes any breaks for meals or otherwise, as discussed above.

To calculate the hours worked by Plaintiff Argueta, Plaintiffs rely on the time records provided by the Defendants, using as an example a time record for the weeks May 1 through May 15, 2015, where the hours for those 15 days add up to 167.55. *See* Pls.' Mot., Ex. H [Time Records for Plaintiff Argueta]. A review of these records indicates a multitude of discrepancies. First, the time records are prefaced by a cover page that indicates that use of the punch clock started around **August or September of 2016**, but the records attached appear to date back to February of 2014

(emphasis added by the Court). *See* Ex. H. Although the Court acknowledges that these records were produced by the Defendants, if Plaintiffs are relying on these records and expect this Court to do the same, they should at the very least proffer an explanation for the way in which the punch clock system was utilized by employees and a **verification** that the system was in place during May 2015 (the period on which Plaintiffs focus). This explanation might have been obtained via an interrogatory that requested this information, or elicited during deposition testimony, or explained in an affidavit submitted by Plaintiff Argueta.

Second, while Teakwood restaurant's hours of operation on Mondays through Thursdays are 11 a.m. - 3 p.m. and 4:30 p.m.- 10:00 p.m., *see* Ex. D, the May 1 – May 15, 2015 time records identified by Plaintiffs in the Motion show Plaintiff beginning his workday around 10:00 a.m. on Mondays through Thursdays, an hour before the restaurant opened and one and one-half hours before he was presumably scheduled to start work.[3] Plaintiffs proffer no explanation to account for the difference in hours testified to by Defendant Kampirapang and those reflected on the time records, other than referring to Defendant's testimony as "confusing."

Third, the Court notes that many entries on the time records are marked as "Data Compromised," which again makes this Court question any reliance on the records. *See* Ex. H.

Fourth, Defendant Kampirapang testified that Plaintiff Argueta was compensated for extra hours that he worked, with the effect that Plaintiff was "paid $71 extra in this week [a week in April 2015, as referenced by Plaintiffs' counsel in his question] because he worked an extra half day" where a "half day means 5 o'clock to 10." Kampirapang Dep. at 31-32. Assuming there

---

[3] Although it is unclear from the record in this case exactly when Plaintiff Argueta was promoted from dishwasher to sushi preparer, it appears from Mr. Kampirapang's testimony that Plaintiff was working as a dishwasher in May of 2015, when he was punching in on the time clock at 10:00 a.m. on weekdays. Kampirapang Dep. at 25, 29.

were no breaks during that 5-hour half day, Plaintiff's hourly rate for that half day would be $14.20, which is close to the hourly rate for time and a half, based on a minimum wage of $9.50 per hour in April 2015.

Accordingly, considering the evidence in the light most favorable to the Defendants, the Court finds that summary judgment on the issue of liability for overtime pay in favor of Plaintiff Argueta must be denied because there are several unresolved issues of material fact that bear on the calculation of hours. Similarly, because there are inconsistencies and gaps in the record before this Court relating to Plaintiff Argueta's hours worked, the Court denies summary judgment on Plaintiffs Argueta's minimum wage claim where the calculation of Plaintiff's hourly wage hinges on the number of hours worked.

### D. Defendants' Counterclaim

Plaintiff Melendez claims that the Defendants' Counterclaim: (1) lacks a reasonable basis in fact or law; and (2) it is retaliatory.[4] The Defendants' Counterclaim alleges that Plaintiff Melendez conspired with Third-Party Defendant Jose Carmelo Melendez Reyes ("Reyes") to breach confidentiality/non-disclosure provisions in a settlement agreement entered into by Reyes in another FLSA lawsuit involving the Defendants, by "publiciz[ing] the confidential terms of the Settlement" and "solicit[ing] other persons to sue Defendants." Counterclaim, ECF 11, ¶ 51. The Counterclaim asserts further that Reyes and Plaintiff Melendez tortiously interfered with Defendants' contractual rights and business expectancy by doing the same.

Plaintiffs argue that there is no factual or legal basis for the Counterclaim against Plaintiff Melendez, and this Court addresses the lack of factual support. Plaintiffs allege that "[w]hen asked

---

[4] To avoid confusion, in this section, the parties are just referred to as Plaintiffs and Defendants and not Counter-Plaintiffs and Counter-Defendants.

about the counterclaim at his deposition, Defendant Kampirapang essentially admitted that he brought the counterclaim because he was unhappy about being sued again for wage and hour violations." Pls.' Mot. at 16-17; *see* Kampirapang Dep. at 23-24 (when asked why he is suing Melendez, Kampirapang responds that "[i]t's not fair for me, you know" and then discusses how he helped Melendez with loans of money, insurance, and taking him back even after he got drunk and was fired from somewhere else, and he gave him many chances). Defendant Kampirapang did not mention Plaintiff Melendez publicizing the settlement agreement from the other case or recruiting other employees to join in this lawsuit. Nor is there anything in the record before this Court to indicate that Plaintiff Melendez breached the Settlement Agreement by publicizing it or that he recruited other employees to join the lawsuit. Plaintiffs indicate that "Melendez came to undersigned counsel's office quite independently from Plaintiff Diaz Argueta — and from any of the Plaintiffs in the prior lawsuit against Defendants" and he will "testify to this if Defendants' counterclaim is allowed to proceed." Ps.' Mot. at 17. Defendants proffer nothing to rebut Plaintiffs' statements and nothing in support of the allegations in their Counterclaim. In fact, Defendants do not address this argument at all in their Opposition. "It is well established that if a [party] fails to respond to an argument raised in a motion for summary judgment it is proper to treat that argument as conceded." *Wilkins v. Jackson*, 750 F. Supp. 2d 160, 162 (D.D.C. 2010).

Accordingly, judgment shall be entered in favor of Plaintiff Melendez on Defendants' Counterclaim because there is no factual support for the claims asserted therein.[5] Furthermore, regarding Third-Party Defendant Reyes, this Court notes that there is no record on the docket of this Counterclaim having been served on him. Pursuant to Fed. R. Civ. P. 4(m):

---

[5] The Court need not address Plaintiffs' statement that the Counterclaim lacks a reasonable basis in law because the Counterclaim lacks a reasonable basis in fact.

> If service of the summons and complaint is not made upon a defendant within 90 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified period of time; provided that plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

This Court shall dismiss Third-Party Defendant Reyes instead of providing Defendants with an opportunity to effect service because discovery in this case has already concluded, a dispositive motion has been filed, and summary judgment is being entered in favor of Plaintiff Melendez on the Counterclaim.

### E. Plaintiffs' Claim of Retaliation

Plaintiffs assert that a counterclaim can be grounds for a retaliation claim if the counterclaim lacks "a reasonable basis in fact or law." Pls.' Mot. at 17; *see Darveau v. Detecon, Inc.*, 515 F.3d 334, 341 (4th Cir. 2008) (citing *Bill Johnson's Rests. v. NLRB*, 461 U.S. 731, 744 (1983)). This cite by Plaintiffs is incomplete. *See Darveau*, 515 F.3d at 341 ("[T]he Supreme Court has expressly held that a lawsuit filed by an employer against an employee can constitute an act of unlawful retaliation under another federal statute governing employment rights when the lawsuit is filed with a retaliatory motive and lacking a reasonable basis in fact and law.") (citing *Bill Johnson's Rests. v.* NLRB, 461 U.S. 731, 744 (1983)).

In *Darveau*, an employee who was terminated sued for overtime pay under the FLSA, and his employer sued for fraud and breach of contract, which triggered the employee adding FLSA retaliation claims. The district court dismissed the retaliation claims for failure to state a cause of action insofar as the employee needed to allege that his employer retaliated against him with a "materially adverse employment action." *Darveau*, 515 F. 3d at 343. The circuit court reversed the district court's dismissal of a retaliation claim, under the rationale that a plaintiff asserting a retaliation claim under the FLSA "need only allege that his employer retaliated against him by

engaging in action "that would have been materially adverse to a reasonable employee" because the "employer's actions . . . could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Darveau*, 515 F.3d at 343 (citing *Burlington Northern*, 126 S. Ct. at 2409).

Plaintiffs rely also on the DCWPCL, which states that it is "unlawful for any employer to discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employees or person because that employee or person has . . . initiated . . . a proceeding under or related to [the DCWPCL] . . . [or] [p]rovided information to any other person regarding a violation, investigation, or proceeding under [the DCWPCL]." D.C. Code § 32-1311(a)(2)&(3). Furthermore, Plaintiffs contend that because the counterclaim was brought within 90 days of the protected activity (the filing of the original complaint), "the DCWPCL presumes that the counterclaim was retaliatory." D.C. Code § 32-1311(b). Accordingly, Plaintiffs conclude that the Court should find in favor of the Plaintiff Melendez on his retaliation claim.

As a preliminary matter, the Court notes that neither Statements of Fact nor evidence discussed in this motion relate to Plaintiff Melendez's retaliation claim; instead, Plaintiffs treat this as a purely legal issue, and they rely solely on the *Darveau* case and certain D.C. Code sections to support their contention that their retaliation claim should be granted by the Court. Defendants proffer no response on Plaintiffs' contention.

Addressing Plaintiffs' statement that there is a presumption of retaliation because the Counterclaim was brought within 90 days of the Complaint, the Court notes first that the Counterclaim in the instant case is a compulsory counterclaim pursuant to Fed. R. Civ. P. 13. *See* Counterclaim, ECF No. 11, ¶ 5. A counterclaim is generally not an adverse employment action that supports a retaliation claim. *See Gross v. Akin, Gump, Strauss, Hauer & Feld, LLP*, 599 F.

Supp. 2d 23, 33=34 (D.D.C. 2009) (In a suit involving a discrimination claim under the ADEA, the employer counterclaimed for breach of fiduciary duty and tortious interference with prospective economic advantage, and the court found that the employer's counterclaim was filed not in retaliation but because it was compulsory under the federal rules and it contained claims that would have been waived if not asserted.) In *Gross,* the Honorable Emmet G. Sullivan prefaced his ruling on the counterclaim not being retaliatory by noting that:

> The D.C. Circuit has never found that the filing of a counterclaim constitutes an adverse employment action. Moreover, other federal courts have specifically held that counterclaims cannot, as a matter of law, constitute an adverse employment action. *See Earl v. Electro-Coatings of Iowa, Inc.,* 2002 WL 32172298, at *2 (N.D. Iowa Oct. 29, 2001) (unpublished) ("Although many different post-termination actions may constitute retaliation, this court holds that, ordinarily, a counterclaim may not. Initially, the court notes that a counterclaim is not to be considered an employment-related action. Only in the rare case will conduct that occurs within the scope of litigation amount to retaliation." (citing *Steffes v. Stepan Co.,* 144 F.3d 1070, 1075 (7th Cir. 1998))); *Beltran v. Brentwood N. Healthcare Ctr.*, *LLC*, 426 F. Supp. 2d 827, 833-34 (N.D. Ill. 2006) ("[I]f the mere filing of a counterclaim were sufficient to give rise to a retaliation claim, then every defendant in an FLSA, Title VII or ADA lawsuit who asserts a counterclaim would be subject to a retaliation claim.") Filing a counterclaim is different from initiating a lawsuit against a complaining employee, as "filing a counterclaim will not chill plaintiffs from exercising and enforcing their statutory rights because by the time the employer files its counterclaim, plaintiffs have already made their charges and initiated a lawsuit." *Beltran*, 426 F. Supp. 2d at 834 (citing *EEOC v. K & J Mgmt., Inc.*, 2000 WL 34248366, at *4 (N.D. Ill. 2000) (unpublished)).

*Gross*, 599 F. Supp. 2d at 33-34. There is an exception however to this general rule that a counterclaim does not support a retaliation claim insofar as "the filing of a baseless pleading can, under certain circumstances, constitute adverse employment action sufficient to state a claim for retaliation." *Flores v. Mamma Lombardis of Holbrooke, Inc.*, 942 F. Supp. 2d 274, 279 (E.D.N.Y. 2013).

In the instant case, Plaintiffs rely on a provision of the DCWPCL that certain employee rights may not be restricted under the DCWPCL (and related statutes). *See* D.C. Code § 32-1305 ("[N]o provision of [the DCWPCL] shall in any way be contravened or set aside by private

agreement.")  Plaintiffs do not cite any cases or legislative history interpreting the scope of this provision.  Moreover, Plaintiffs cite that statutory provision in a vacuum instead of applying it within the context of the facts underlying Defendants' counterclaim alleging violations of a settlement agreement containing confidentiality/nondisclosure provisions, where the settlement agreement provided consideration to both parties and was negotiated at arm's length, with the assistance of counsel.  Assuming *arguendo* that the confidentiality/nondisclosure provisions are unenforceable as a matter of law, based upon the provision cited by Plaintiffs, the counterclaim may be baseless and therefore, an appropriate basis for a retaliation claim; however, Plaintiffs have neither developed this argument nor have Defendants responded.  Accordingly, the Court denies Plaintiffs' request for summary judgment on their retaliation claim because this issue has not been sufficiently briefed by the parties.

### F. Tip Credit

Plaintiffs acknowledge that Defendant did not raise a "tip credit" defense in their pleadings. but they expect that Defendants will try "to claim such a credit towards their obligation to pay the minimum wage."  Pls." Mot. at 18.  Any such "tip credit" would only apply to Plaintiff Argueta, who earned tips when he became a sushi preparer.  In certain circumstances, the DCMWA permits an employer to take a "tip credit" against their obligation to pay the minimum wage."  D.C. Code § 32-1003(f)(1).  Plaintiffs assert that these circumstances do not apply in this case for three independent reasons, only one of which need be addressed by this Court.  The DCMWA requires that "[a]ll gratuities received by the employee have been retained by the employee."  D.C. Code Section 32-1003(g)(2).  Defendants admit that Defendant Kampirapang personally decided how much in "tips" to pay Plaintiff Diaz Argueta.  Pls.' SOF ¶ 15; Defs' SOF ¶ 15.

Accordingly, there is no dispute that at least one of the requirements for application of the "tip credit" has not been met, and therefore, a "tip credit" would not apply in this case. Furthermore, Defendant does not address the issue of a tip credit in its opposition, and it may be treated as uncontested. *Wilkins v. Jackson*, 750 F. Supp.3d at 162 (citing *FDIC v. Bender*, 127 F.3d 58, 67 *D.C. Cir. 1997)).  Accordingly, summary judgment on this issue shall be awarded in favor of the Plaintiffs.

### G.  Compensation for Split Shift

Plaintiffs contend that they are entitled to one additional hour of compensation at the minimum wage for each day they worked a split shift. 7 DCMR § 906.1.  The regulations define a "split shift" as "a schedule of daily hours in which the hours worked are not consecutive, except that a schedule in which the total time out for meals does not exceed one hour shall not be deemed a "split shift."  7 DCMR § 999.2.  Plaintiffs preface their argument by stating that "[t]he parties hotly contest the length of the break that Plaintiffs were permitted to take every workday [a]nd Defendant Kampirapang, in his deposition testimony, seemed quite unsure. . .," but Plaintiffs are willing to "concede that Defendants required them to take . . . .  a break of just over one hour on every full workday that they worked."  Pls.' Mot.; at 19.  Plaintiffs argue therefore that they should receive the extra compensation for a split shift.  Defendants say it "is undisputed that Plaintiffs were employed on a split shift basis" but they disagree with Plaintiffs' characterization of their schedules.  Pls.' SOF ¶ 11; Defs.' SOF ¶ 11.

Plaintiffs themselves state that this issue is "hotly contested," and further, that Mr. Kampirapang's deposition testimony — which Plaintiffs seem to adopt, at least in part, for purposes of determining their entitlement to split shift compensation — is "confusing."  As discussed previously herein, the parties do not agree regarding the hours worked by Plaintiffs,

their schedules, and any breaks taken for meals or otherwise. Accordingly, considering the record before this Court, there are genuine issues of material fact that precluding summary judgment on whether Plaintiffs are entitled to compensation for an extra hour for each day during which they may have worked a split shift, and it is premature to consider this issue until Plaintiffs' hours/schedules are resolved.

## IV. CONCLUSION

Summarizing the Court's rulings, which are explained in detail herein, this Court GRANTS summary judgment in favor of Plaintiffs on the following issues: (1) Defendant Kampirapang is individually liable as an "employer;" (2) the three Corporate Defendants are jointly liable for any violations of the FLSA and DCMWA; (3) there is no factual support for Defendants' Counterclaim, and therefore, Defendants may not proceed on the Counterclaim against Plaintiff Melendez, and the Court dismisses Third-Party Defendant Reyes, who was never served by the Defendants; and (4) Defendants may not take a "tip credit" to offset any alleged failure to pay the minimum wage and may not raise a "tip credit" as a defense in this litigation.

This Court DENIES summary judgment in favor of Plaintiffs on the following issues: (1) Defendants' alleged violation of the overtime provisions of the FLSA and the DCMWA; (2) Defendants' alleged violation of the minimum wage provisions of the DCMWA; (3) Plaintiff Melendez's claim of retaliation; and (4) Plaintiffs' entitlement to compensation for any split shifts.

DATE: September 27, 2018 _____/s/_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE